NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EDWARD H. JACKSON,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2012-7056

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-2663, Chief Judge Bruce E. Kasold.

---

Decided: December 6, 2012

---

EDWARD H. JACKSON, of Oakland, California, pro se.

JEFFREY D. KLINGMAN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON,

Director, and KIRK T. MANHARDT, Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and AMANDA R. BLACKMON, Attorney, United States Department of Veterans Affairs, of Washington, DC.

————————————

Before LOURIE, MOORE, and O'MALLEY, *Circuit Judges.*

PER CURIAM.

Edward H. Jackson ("Jackson") appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court"). The Veterans Court affirmed a decision of the Board of Veterans' Appeals ("the Board") denying entitlement to service connection for a degenerative lumbar disc condition. *Jackson v. Shinseki*, No. 10-2663, 2011 WL 5533325 (Vet. App. Nov. 15, 2011). For the reasons that follow, we dismiss for lack of jurisdiction.

## BACKGROUND

Jackson served on active duty in the United States Navy from May 1977 to September 1982 and from December 1983 to December 1985. In September 1978, Jackson was evaluated by military medical personnel after complaining of pain in his left side, leg, groin, and back; he was diagnosed with an enlarged lymph node and cellulitis (a skin infection) and treated accordingly. In June 1980, Jackson reported experiencing low back pain, later diagnosed as a lumbosacral strain, after falling from a bicycle. Subsequent medical records include in-service examinations in 1982 and 1983 and an examination upon his separation from service in 1985, all reflecting no further back pain or associated treatment. The record also indicates that Jackson was involved in a post-service

car accident in 1993 in which he suffered an L3 vertebral compression fracture and an ankle fracture.

In January 2004, Jackson underwent a private MRI examination that revealed degenerative disc disease in the L5-S1 region, and the examining physician stated his opinion that "the degenerative changes . . . probably started with the lymphanditis and cellulites [sic] he first experienced in the military." Later that month Jackson filed a claim at the Department of Veterans Affairs ("VA") seeking disability benefits. The VA denied that claim in June 2004, and Jackson appealed to the Board. The VA conducted its own examination in March 2005, finding a lumbar strain with nerve compression. The VA examiner opined that "there does appear to be a lumbar disability . . . that originated in the service" and likely worsened after Jackson's post-service auto accident. The VA confirmed the diagnosis with MRI and electromyography studies, and Dr. Richard Karp, the treating physician, suggested in October 2008 that Jackson might have been erroneously diagnosed with cellulitis rather than a back injury in 1978.

The Board conducted a hearing in November 2008, in which it reviewed the record and heard Jackson's testimony detailing his in-service medical history and describing chronic back pain following his separation from service in 1985. Jackson also submitted lay statements from his cousin and sister averring that Jackson had suffered ongoing pain and disability since leaving the Navy. The Board remanded in light of Dr. Karp's statements suggesting that Jackson's in-service cellulitis diagnosis may in fact have been a back injury now manifesting in his current disability. Accordingly, the Board requested further development and instructed that a new VA examination be conducted.

The VA performed the new examination in April 2009. The examiner confirmed the prior diagnosis of lumbosacral degenerative disc disease and reviewed Jackson's service and post-service medical history, stating that the 1978 cellulitis diagnosis had "nothing to do" with his current back problems and noting that Jackson was seen only once for back pain during service, in June 1980. The examiner further noted that all subsequent recorded examinations lacked any mention of back problems and that Jackson's medical record contained no evidence of such complaints until after the 1993 auto accident. Noting that degenerative disc disease is "not uncommon" at Jackson's age, the examiner opined that his present symptoms were likely age-related and that it would be "mere speculation to make any connection of his current back problems to that of a one-time minor episode" in 1980. The examiner thus concluded that Jackson's current disability was unrelated to his active military service.

In July 2010, the Board issued its decision denying Jackson's claim. The Board found the 2009 VA examination report more probative than the 2004 and 2005 medical opinions because the 2004 report was not based on a review of Jackson's claims file and the 2005 report included statements inconsistent with the available medical records. The Board also found that Jackson's testimony was not credible and not sufficient to establish a connection between his current disability and his earlier military service. Accordingly, the Board concluded that the preponderance of the evidence weighed against finding Jackson's back condition to be service connected.

Jackson requested review of the Board's decision, and the Veterans Court affirmed. *Jackson*, 2011 WL 5533325, at *1. In particular, the Veterans Court held that (1) the

Board adequately considered the lay statements submitted on Jackson's behalf, (2) the Board sufficiently explained its decision to afford more probative weight to the 2009 medical examination report than the 2004 and 2005 reports, (3) the Board had not improperly developed negative evidence against Jackson's claim by ordering the 2009 examination, (4) the 2009 examination report was not premised on an incorrect or incomplete understanding of the facts, and (5) the Board's ultimate conclusion that the evidence weighed against Jackson's claim was not clearly erroneous. *Id.* at *1–3. Jackson timely appealed to this court.

## DISCUSSION

Our jurisdiction to review decisions of the Veterans Court is circumscribed by statute. Under 38 U.S.C. § 7292(a), a party may obtain review "with respect to the validity of a decision of the Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision." Under § 7292(d)(2), however, absent a constitutional issue, we "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case."

In his informal brief, Jackson argues that under the benefit-of-the-doubt doctrine "a veteran need only demonstrate that there is an approximate balance of positive and negative in order to prevail" and contends that he has established that balance in the evidence. The benefit-of-the-doubt doctrine provides that "[w]hen there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to

the claimant." 38 U.S.C. § 5107(b); *see also* 38 C.F.R. § 3.102. By its terms, the benefit-of-the-doubt doctrine applies only when the evidence for and against the veteran's claim lies in approximate balance, yet in this case the Board found that "the preponderance of the evidence is against finding that the Veteran's current low back disability is etiologically related to his military service." By arguing that the doctrine should nonetheless be applied, Jackson necessarily contends that the evidence presented was near equilibrium, contrary to the Board's express findings. Jackson's argument thus rests on disagreement with the Board's evaluation and weighing of the evidence, which constitute factual determinations that lie beyond our jurisdiction under § 7292(d)(2).

Jackson also cites *Reonal v. Brown*, 5 Vet. App. 458 (1993), in support of his appeal, but that case concerned the standards for determining whether newly submitted evidence qualifies as sufficiently material to warrant reopening a previously denied claim for service connection. We do not see, nor has Jackson explained, how that decision bears on the disputed issues in this appeal.

Finally, Jackson argues that the Board violated 38 U.S.C. § 7104(d)(1), which requires "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record" in each of its written decisions. As he argued before the Veterans Court, Jackson maintains that the Board did not adequately explain "why it failed to properly weigh and consider evidence favorable to Appellant." The Veterans Court considered that argument and held that "the Board's view of the evidence is plausible and not clearly erroneous, and its statement in support thereof is understandable and facilitative of judicial review." *Jackson*,

2011 WL 5533325, at *1. Disturbing that conclusion would require us to pass on the Veterans Court's application of law, § 7104(d)(1), to the facts, presumably the Board's evaluation of the 2004 and 2005 medical opinions. We lack jurisdiction to perform such a review. *Cook v. Principi*, 353 F.3d 937, 940–41 (Fed. Cir. 2003).

For the foregoing reasons, we must dismiss for lack of jurisdiction.

**DISMISSED**

COSTS

No costs.